UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BRANDEE PIERCE,

     Plaintiff,

v.                                                          Case No: 5:24-cv-711-PRL

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## ORDER

Plaintiff appeals the administrative decision denying her applications for a period of disability and disability insurance benefits ("DIB") and Supplemental Security benefits ("SSI"). Upon a review of the record, the memoranda, and the applicable law, the ALJ's decision is **affirmed**.

## I.  BACKGROUND

On November 22, 2021, Plaintiff filed an application for DIB benefits alleging disability beginning April 30, 2021. Plaintiff's claim was denied initially and upon reconsideration. On April 10, 2024, Plaintiff filed an application for SSI benefits.[1] At the hearing on July 10, 2024, Plaintiff, who was represented, testified as did a vocational expert. On July 29, 2024, the Administrative Law Judge (ALJ) issued an amended unfavorable decision finding Plaintiff not disabled. (Tr. 10-25).[2] Plaintiff's request for review was denied

---

[1] Although the SSI application does not appear in the administrative record, it was referenced by the ALJ in her decision. (Tr. 10). The ALJ stated in the decision that she was accepting acceleration of the application because the SSI and DIB applications share an overlapping period and have the same medical or substantial gainful activity issue.

[2] The initial unfavorable decision was issued on July 18, 2024. (Tr. 33-47).

by the Appeals Council, and Plaintiff initiated this action on December 26, 2024. (Doc. 1). Plaintiff has exhausted her administrative remedies, and the final decision of the Commissioner is ripe for review under 42 U.S.C. § 405(g).

Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments: venous stasis of the bilateral legs and morbid obesity. (Tr. 11). The ALJ found that Plaintiff had the residual functional capacity to perform light work except that she can sit for 6 hours in an 8-hour workday; stand and/or walk for 4 hours in an 8-hour workday; is to do no climbing of ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; is to avoid unprotected heights and hazardous machinery; and with vision can avoid ordinary hazards in the workplace. (Tr. 17). Based upon this RFC and testimony from a vocational expert, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy, including laundry worker, ironer, and mail clerk. (Tr. 24). Accordingly, the ALJ determined that Plaintiff was not disabled from April 30, 2021, through the date of the decision. (Tr. 25).

## II.    STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at

step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

III.    DISCUSSION

On appeal, Plaintiff argues that the ALJ failed to consider Plaintiff's severe hypertension in combination with her other impairments in assessing her RFC, and that the ALJ failed to properly evaluate Plaintiff's mental impairments. As discussed below, I find that neither of these arguments has merit and that the ALJ's final decision is supported by substantial evidence.

First, Plaintiff contends that the ALJ did not consider or mention her hypertension and failed to consider the impact of hypertension individually and in combination with her other impairments. (Doc. 11 at 10-11).

In support of this argument, Plaintiff points to three instances of high blood pressure noted in the record. (Doc. 10 at 11). On November 22, 2022, consultative examiner Martin Schoer, NP, recorded Plaintiff's vital signs, including her blood pressure of 176/102. (Tr. 375-81). Again, in January 2024, a consultative examiner, Robin K. Woodberry, M.D., recorded Plaintiff's vital signs, including blood pressure of 173/93, with a pulse that was 101. (Tr. 388-93). Then, on February 18, 2024, Plaintiff's blood pressure was recorded as 180/100. (Tr. 404). None of these medical sources commented on Plaintiff's blood pressure readings or diagnosed her with hypertension. Nevertheless, Plaintiff cites to an article on the American Heart Association website, which explains the significance of the blood pressure readings and contends that they support a diagnosis of hypertension. (Doc. 11 at 11) ("A blood pressure with a systolic of 140mmHg or higher and a diastolic of 90 mmHg or higher represents Stage Two hypertension and a systolic of 180mmHg, or higher, represents hypertensive emergency.").

Plaintiff has not identified any medical record in which she was diagnosed with or treated for hypertension. At most, on one occasion, hypertension was listed as a past medical issue for Plaintiff—but, in that record, the examining medical source did not include hypertension in the final diagnostic impression. (Tr. 376, 380).  And when Plaintiff was asked to list all physical or mental conditions that limit her ability to work, she did not include hypertension. (Tr. 260).

Even if Plaintiff had (or could have) been diagnosed with hypertension, the mere existence of a diagnosis does not reveal the extent to which the impairment limits her ability to work, nor does it undermine the ALJ's determination in that regard. *Moore v. Barnhart*, 405 F.3d 1208, 1213, n.6 (11th Cir. 2005). Rather, Plaintiff must show, with objective medical evidence, that her diagnosed impairment causes disabling functional limitations. Here, the ALJ considered the impairments reported by Plaintiff, some of which could be related to hypertension, such as pitting edema and macular degeneration. Plaintiff has failed to provide evidence of any functional limitations caused by hypertension.

Plaintiff also contends in passing that her "hypertension was uncontrolled or untreated because [she] lacks the financial resources for a primary care provider or other appropriate treatment." (Doc. 11 at 12). In support, Plaintiff cites to a report from her January 16, 2024, consultative examination by Robin K. Woodberry, MD, in which it was noted that Plaintiff "is not taking any medications due to not having insurance." (Tr. 389). However, as discussed above, there is no evidence of a hypertension diagnosis or that Plaintiff was ever treated for hypertension. Thus, Plaintiff has failed to offer any evidence suggesting that if Plaintiff was not taking medications due to her lack of insurance, that this included any medication for hypertension.

Next, Plaintiff argues that the ALJ failed to properly consider Plaintiff's mental impairments. The ALJ considered Plaintiff's medically determinable mental impairments both singly and in combination and found that they were nonsevere because they did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. (Tr. 14). In making this finding, the ALJ considered the four broad functional areas—i.e., understanding, remembering, or applying information; interacting with others;

concentrating, persisting, or maintaining pace; and adapting or managing oneself—and found that Plaintiff had only mild limitations in each of the areas. (Tr. 14-16). Then, in her RFC assessment, the ALJ did not include any mental limitations.

Plaintiff does not appeal the ALJ's finding that Plaintiff's mental impairments were nonsevere and caused only mild limitations. Instead, Plaintiff argues that the ALJ erred by not evaluating the impact of those mild mental limitations on her ability to work in the RFC assessment. As an initial matter, the ALJ "is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations in the PRT criteria." *Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022). And, while the ALJ did not include any mental limitations in the RFC, the ALJ considered Plaintiff's subjective reports that she has a hard time maintaining concentration and focus due to attention deficit hyperactivity disorder and post-traumatic stress disorder; and that she endorsed feelings of nervousness when out in public. (Tr. 18). The ALJ also considered the psychological consultative examinations conducted by Nicholas Gehle, Psy.D. (Tr. 20, 23, 382-85), and Linda Bojarski, Psy.D. (Tr. 20-21, 23, 397-400)—examinations which Plaintiff concedes constitute the "primary evidence" related to Plaintiff's mental impairments. (Doc. 11 at 15-16).

Dr. Gehle examined Plaintiff on December 2, 2022, and opined that Plaintiff's mental health symptoms appeared to be moderately to severely impacting activities of daily living, vocational performance, and interpersonal interactions. Dr. Bojarski examined Plaintiff on January 23, 2024, and noted that Plaintiff reported that she was able to perform all activities of daily living "independently." (Tr. 21, 397-400). On mental status examination, the only deficit identified by Dr. Bojarski was that Plaintiff showed a moderate deficit in abstract

thinking. (Tr. 399). While Dr. Bojarski also reported that Plaintiff's responses to structured questions assessing judgment and common-sense reasoning skills were 25% inaccurate, she did not opine that the inaccuracy rate corresponded with a deficit in that area. (Tr. 399).

The ALJ must assess the persuasiveness of a medical source's opinions in light of the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 404.920c(a)-(c). An ALJ may, but is not required to, explain how he or she considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

"Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021). "Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record." *Sosa v. Kijakazi*, No. 8:20-cv-1360-SPF, 2022 WL 420755, *3 (M.D. Fla. Feb. 11, 2022).

As for Dr. Gehle, the ALJ found his opinion not persuasive, explaining that the limitations were inconsistent with the activities of daily living reported by the claimant and were not supported by the results of the mental status examination contained within Dr.

Gehle's report. (Tr. 23). Plaintiff argues that the ALJ failed to explain what activities of daily living support the ALJ's finding. However, the ALJ specifically detailed Plaintiff's reported activities of daily living as recorded by Dr. Gehle—including that she was able to bathe, dress, and toilet herself; could prepare food without assistance, and could complete basic household chores as long as they do not involve long period of standing and was able to manage money effectively. (Tr. 20, 383). Moreover, as the ALJ explained, Dr. Gehle did not identify any limitations or deficiencies in the mental status examination. Indeed, he noted that Plaintiff was alert and oriented to person, place situation, and time; demonstrated adequate attention and concentration; appeared to have adequate mental flexibility; did not display any significant difficulties in processing speed; had adequate receptive and expressive language; immediate, recent and remote memory all appeared adequate; demonstrated fair mental computation; displayed fair social skills; judgment related to self-care and social problem-solving appeared to be adequate; insight appeared to be fair; overall intelligence was below average; general thought processes appeared to be coherent, logical and goal directed; and her thought form and content appeared to be unremarkable. (Tr. 384). Accordingly, the ALJ's conclusion that Dr. Gehle's opinion was not supported by his own records and was inconsistent with Plaintiff's self-reported activities of daily living is supported by substantial evidence.

Turning to Dr. Bojarski, the ALJ found her opinion persuasive to the extent that she found that Plaintiff had no mental limitations, except for the moderate deficit in abstract thinking, which the ALJ concluded did not undermine the RFC. (Tr. 20-21). Plaintiff argues that the ALJ erred by not including a limitation in the RFC for the moderate deficit in "abstract thinking." However, the ALJ had already explained that Plaintiff had only mild

limitations in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (Tr. 14-15). And Dr. Bojarski reported that Plaintiff's mental status examination was inconsistent with immediate memory deficits and concentration deficits. (Tr. 399). Plaintiff fails to explain how a limitation with respect to "abstract thinking" creates more than a mild functional limitation or how it might present itself in an RFC finding. Accordingly, Plaintiff has failed to show that the ALJ erred in evaluating Dr. Bojarski's opinion.

## IV.   CONCLUSION

Accordingly, the ALJ's decision is **AFFIRMED**. The Clerk is **directed** to enter final judgment in favor of the Commissioner and close the file.

**DONE** and **ORDERED** in Ocala, Florida on March 23, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties